IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ACS STATE HEALTHCARE, LLC, a Delaware Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>DAVID HEINEMAN, in his official capacity as GOVERNOR OF THE STATE OF NEBRASKA; JON BRUNING, in his official capacity as ATTORNEY GENERAL OF THE STATE OF NEBRASKA; CARLOS CASTILLO, in his official capacity as DIRECTOR, DEPARTMENT OF ADMINISTRATIVE SERVICES; CHRISTINE PETERSON, CEO OF THE DEPARTMENT OF HEALTH & HUMAN SERVICES; and STEVE SULEK, in his official capacity as ACTING MATERIAL DIVISION ADMINISTRATOR,<br><br>Defendants. | Case No.: _____<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>(Jury Trial Requested) |

COMES NOW ACS State Healthcare, LLC ("ACS") and for its Complaint against Defendants alleges as follows:

### INTRODUCTION

This action is brought by ACS, which has been deprived of its constitutionally protected property interest as the highest-scoring responsible bidder in a public contract to procure and develop a new Medicaid Management Information Systems ("MMIS") or enhance the current MMIS for the Nebraska Department of Health and Human Services ("DHHS"). As described by

Nebraska DHHS, the federal "Centers for Medicare and Medicaid Services (["]CMS["]) requires a certified and continuously operational MMIS . . . CMS funds the MMIS at 75% for operations and 90% for MMIS enhancement and replacement." Nebraska Department of Health & Human Services, http://www.hhs.state.ne.us/med/mmis/alternatives.htm (last visited Feb. 1, 2008).

In accordance with Sections 1102, 1902(a)(4), and 1903(a)(3) of the Social Security Act (42 U.S.C. § 1302, 1396a(a)(4), and 1396b(a)(3)), the U.S. Department of Health and Human Services ("HHS") issued regulations governing grants to states for Medicaid programs and the automated data processing systems used to operate a state's Medicaid programs. Subpart F of 45 C.F.R. § 95 governs HHS's federal financial participation ("FFP") in, and the State's procurement of, automatic data processing ("ADP") equipment and services, including MMIS as described in 42 U.S.C. § 1396b(a)(3). Nebraska's procurement of a MMIS contract under Request for Proposal ("RFP") 2017Z1 ("MMIS Contract") and related services is subject to the procurement standards prescribed by 45 C.F.R. part 74, including prohibitions on organizational conflicts of interest and prohibitions on awards to bidders involved in the development of an RFP. 45 C.F.R. § 74.43.

Defendants have provided notice of an intent to award the MMIS Contract to FourThought Group, Inc. ("FourThought"), in violation of the above federal procurement regulations and in violation of Fourteenth Amendment of the United States Constitution, made actionable under 42 U.S.C. § 1983 and 28 U.S.C. § 2201. ACS seeks a declaratory judgment, pursuant to 28 U.S.C. § 2201, that Defendants' award of the Contract to FourThought would violate 45 C.F.R. 95.613(a) and (b), and 45 CFR § 74 and unconstitutionally interfere with ACS' rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, § 1 ("Due Process Clause"). ACS seeks an injunction to enjoin Defendants' award

of the MMIS Contract in violation of law, to compel the Defendants to follow applicable procurement laws in awarding the MMIS Contract, to compel Defendants to award the MMIS Contract to ACS, and an order awarding attorneys' fees under 42 U.S.C. § 1988.

## PARTIES

1.     ACS is a federal and Nebraska taxpayer engaged in the business of, among other things, providing design, development, implementation and operational services of MMIS systems for various states and acting as a Medicaid fiscal agent. ACS has its principal place of business in Atlanta, Georgia and is registered to do business in Nebraska. ACS has conducted business in Nebraska for approximately five years.

2.     Defendant David Heineman ("Governor") is the Governor of the State of Nebraska and is named as a defendant in his official capacity only. The Governor directs and supervises the conduct of Defendants Jon Bruning, Carlos Castillo, Christine Peterson and Steve Sulek. Neb. Rev. Stat. § 81-101, *et seq.*; Neb. Const., art. IV, § 6.

3.     Defendant Jon Bruning ("Attorney General") is the Attorney General of the State of Nebraska and is named as a defendant in his official capacity only. The Attorney General has "charge and control of all the legal business of all departments and bureaus of the state" of Nebraska. Neb. Rev. Stat. § 84-202.

4.     Defendant Carlos Castillo is the Director of the Nebraska Department of Administrative Services and is named as a defendant in his official capacity only. Under § 81-112, he "is empowered to prescribe regulations, not inconsistent with law, for the government of his department, the conduct of its employees and clerks, the distribution and performance of its business, and the custody, use and preservation of the records, papers, books, documents and property pertaining thereto."

5. Defendant Christine Peterson is the CEO of the Nebraska Department of Health & Human Services and is named as a defendant in her official capacity only. Under Neb. Rev. Stat. § 81-112, she "is empowered to prescribe regulations, not inconsistent with law, for the government of his department, the conduct of its employees and clerks, the distribution and performance of its business, and the custody, use and preservation of the records, papers, books, documents and property pertaining thereto."

6. Defendant Steve Sulek is the Acting Administrator of the Materiel Division of the Nebraska Department of Administrative Services and is named as a defendant in his official capacity only pursuant to Neb. Rev. Stat. § 81-147.

## JURISDICTION AND VENUE

7. The Court has original jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), and l343(a)(4) because it arises under the Constitution of the United States and seeks to redress the deprivation of ACS' rights under the color of state law and to secure equitable and other relief for the protection of civil rights.

8. The Court has the authority to grant declaratory and equitable relief for the protection of civil rights under 28 U.S.C. §§ 2201 and 2202 and to award ACS its reasonable attorneys' fees under 42 U.S.C. § 1988.

9. Venue is proper in the United States District Court for the District of Nebraska pursuant to 28 U.S.C. § 1391(b)(2) because all material events at all relevant times occurred within this District.

## BACKGROUND

10. In June 2004, pursuant to RFP 143Z1, DHHS began preparing to develop an RFP for the MMIS Contract, and awarded a consulting contract to GovConnect, Inc. ("GovConnect")

to provide consultant services to assist DHHS in procuring and developing a new MMIS for Nebraska ("GovConnect Contract"). Under the GovConnect Contract, GovConnect "identified and conducted cost/benefit analysis on alternatives and provided recommendations for MMIS enhancement, in-house development, replacement, and/or fiscal agent procurement and prepared an Advance Planning Document (APD), Request for Proposal (RFP) and a Proposal Evaluation Plan (PEP)." (Exhibit A, GovConnect Contract).

11.     The GovConnect Contract also contained a confidentiality provision: "The Contractor agrees that any and all information gathered in the performance of this contract, either independently or through the Department shall be held in the strictest confidence[.]" (Exhibit A, GovConnect Contract).

12.     Among other things, RFP 143Z1 provided that, "The Contractor awarded the Contract pursuant to this RFP shall not be allowed to bid on any subsequent proposal issued by the Department as a result of the outcomes of the deliverables described herein." (Exhibit B, RFP 143Z1 at 26). The RFP defined "Contractor" as "a person or entity which supplies goods or services."

13.     In July 2004, FourThought and GovConnect entered into a Subcontract under the GovConnect Contract and FourThought provided consulting services under the GovConnect Contract to the State of Nebraska ("the Subcontract").

14.     Employees of FourThought were involved in the development of the RFP and were principal participants in the analysis of the alternative options to be included in the RFP and considered by DHHS during its selection of an awardee for the MMIS Contract.

15.     On information and belief, as part of its performance of its Subcontract, FourThought was involved in DHHS' internal discussions and decisions regarding the

development of a new or enhanced MMIS, had access to confidential information and documents created for and by the DHHS for purposes of developing a RFP for a new or enhanced MMIS, and had access to DHHS employees and GovConnect employees who provided confidential information to FourThought (collectively, "Confidential Information"). DHHS has not shared with ACS, and upon information and belief, the other bidders, the Confidential Information obtained by FourThought during its work for GovConnect and the Defendants. GovConnect's and FourThought's services under the GovConnect Contract were extensively utilized in and facilitated the Department of Administrative Services' ("DAS") issuance of RFP 1158Z1 for the development and implementation of a new MMIS.

## DAS ISSUES RFP 1158Z1

16. On December 15, 2005, DAS issued RFP 1158Z1 and received proposals from four bidders, including FourThought and ACS. (Exhibit C, RFP 1158Z1). The RFP contemplated a significant contract to develop and implement a new MMIS for Nebraska.

17. DHHS identified its budgetary commitment to the MMIS procurement at $50 million. (Exhibit D, State of Nebraska Executive Budget at 23).

18. After receiving and evaluating proposals, the DAS disqualified two bidders and ended the procurement because no bids fell within the amount appropriated for the MMIS project. DHHS rejected FourThought's proposal "due to the appearance of impropriety and an actual conflict of interest in serving as a subcontractor to FDGS [GovConnect] under its current contract as the MMIS Consultant in regard to this RFP[.]" (Exhibit E, Memorandum from D. Nelson to R. Gray, dated June 14, 2006). ACS and another bidder's proposals were rejected for exceeding the amount appropriated for the MMIS project, and another bidder's proposal was rejected for non-compliance with federal law.

19. In June 2006, FourThought filed a letter of protest alleging that DAS had made an erroneous decision in finding that FourThought had a conflict of interest. No response by DAS to FourThought's protest letter has been made public.

20. On October 18, 2006, FourThought filed suit in the District Court of Lancaster County, Nebraska against various officials involved in the decisions under RFP 1158Z1, claiming violation of state procurement statutes, denial of due process and deprivation of rights under the United States Constitution. (Exhibit F, FourThought's Complaint). As relief, FourThought sought, among other things, award of the MMIS Contract under RFP 1158Z1.

21. In the Complaint filed by FourThought, FourThought claimed DAS' determination that FourThought had a disqualifying conflict of interest was "erroneous, careless and arbitrary." (Exhibit F, FourThought's Complaint at 36). DAS disagreed, defending its decision that FourThought had a disqualifying conflict of interest, and convincing the District Court and the Court of Appeals to dismiss FourThought's claims with prejudice. On August 23, 2007, the Court of Appeals entered judgment, affirming the District Court's dismissal of all of FourThought's claims. (Exhibit G, District Court of Lancaster County, Nebraska's Order; Exhibit H, Nebraska Court of Appeals' Order).

22. Upon information and belief, during the litigation of FourThought's suit, FourThought requested, and DHHS provided FourThought more than 1,700 internal agency documents related to the preparation of RFP 1158Z1 and evaluation of the proposal submitted in response to RFP 1158Z1. DHHS did not provide those documents to other bidders, including ACS.

**DAS ISSUES RFP 2017Z1**

23. On May 2, 2007, ACS issued RFP 2017Z1, which in all material respects represented a reissuance of RFP 1158Z1. (Exhibit I, RFP 2017Z1). RFP 2017Z1 included certain formatting changes and other updates but sought the same services and system as were requested by DHHS under RFP 1158Z1.

24. RFP 2017Z1 included the following provision regarding evaluation of proposals:

**K.    PROPOSAL EVALUATION**

The State will conduct a fair, impartial and comprehensive evaluation of all proposals in accordance with the criteria set forth below. The criteria for determining a responsible bidding shall include but not be limited to:

1. The ability, capacity and skill of the bidder to deliver and implement the system or project that meets the Requirements of this request for Proposal;
2. The character, integrity, reputation, judgment, experience and efficiency of the bidder;
3. Whether the bidder can perform the Contract within the specified time frame;
4. The quality of the bidder performance on prior Contracts;
5. Such other information that may be secured and that has a bearing on the decision to award the Contract; and
6. Cost.

(Exhibit I, RFP 2017Z1).

25. Proposals under RFP 2017Z1 were submitted by FourThought, ACS and Goldstone Technologies Ltd. and received by DAS on August 9, 2007.

26. As of October 22, 2007, ACS was the highest-scoring responsible bidder on RFP 2017Z1, and its bid was within the State's stated budgetary requirements for the procurement.

27. In connection with the procurement under RFP 2017Z1, DHHS had requested and received approval from CMS relating to the sequence of various stages of the bidding process, in the form of a Proposal Evaluation Guide dated August 9, 2007 ("PEG"). (Exhibit J, PEG). With respect to Oral Presentations, the PEG treated Oral Presentations as an optional

evaluation to be determined by DHHS *after* receiving and evaluating Best and Final Offers ("BAFO") and providing scoring results to the Executive Steering Committee. However, DHHS made the determination to conduct Oral Presentations *before* receiving BAFOs. DHHS' deviation from its own CMS-approved ground rules had the effect of allowing FourThought to present its key management personnel for the Oral Presentations before its final proposal—in the form of a BAFO—which reduced project management by nearly 33%, as described in detail below.

28. DHHS provided no explanation for deviating from the approved procurement procedures set forth in the PEG.

29. On October 26, 2007, after evaluating the bidders' technical and cost proposals and hearing Oral Presentations, the Department requested the bidders to submit BAFOs. The initial Cost Proposals from ACS and FourThought submitted on August 9, 2007 were as follows:

| | |
|---|---|
| ACS | $48,255,680 |
| FourThought | $55,351,400 |

(Exhibit K, initial cost proposals, dated September 12, 2007).

30. ACS and FourThought revised their proposals and submitted their BAFOs on November 2, 2007. The BAFO Cost Proposals were as follows:

| | |
|---|---|
| ACS | $49,067,262 |
| FourThought | $48,976,056 |

(Exhibit L, revised cost proposals, dated November 5, 2007).

31. ACS submitted its BAFO and made appropriate adjustments based on DAS' request. Because ACS submitted a best offer in its original proposal as required by the RFP, it made changes in no other areas.

32.     FourThought's adjustments to its initial cost proposal amounted to a decrease of over $7 million.  While FourThought's initial cost proposal was $7,095,720 higher than ACS', after having the opportunity to review ACS' initial cost proposal and submit a BAFO, FourThought's final cost proposal was now $91,206 lower than ACS'.

33.     FourThought's $7 million price cut, if equated to labor under the MMIS Contract at assumed industry costs, would suggest a greater than 80,000 person hours reduction in services under the Contract or would be accompanied by a reduction in staff, shifting the staffing offshore, reducing scope, significantly changing deliverables and/or time schedules or some combination of these.  The scoring summaries show that, in spite of a reduction of FourThought's cost proposal by $7 million after submission of BAFOs, there was no change to FourThought's technical proposal scores.

34.     On November 21, 2007, DAS posted an intent to award the MMIS Contract to FourThought and provided scoring summaries based on its evaluation before and after submission of BAFOs.  (Exhibit M, Intent to Award Post).

35.     Based on information and belief, DAS did not reevaluate the bidders' technical proposals after receiving the BAFOs, nor did DAS conduct a cost or price analysis of FourThought's bid as required by law.

36.     In violation of the PEG, DAS did not conduct oral interviews after receiving the BAFOs.

37.     On November 30, 2007, ACS filed a formal protest of DAS' intent to award the MMIS Contract to FourThought on grounds that, among other things, FourThought had a disqualifying conflict of interest, that DAS failed to conduct a federally mandated cost or price analysis of FourThought's bid, and generally that the procurement was not conducted in a fair

and open manner. (Exhibit N, ACS Protest). The ACS Protest demonstrated, among other things, that RFP 2017Z1 was not a "new" RFP, and indeed, 87% of the requirements in RFP 2017Z1 were identical to those found in RFP 1158Z1. ACS' Protest demonstrated as well that DHHS staff believed it was not a "new" RFP, and communicated this belief to the primary funding source for the MMIS Contract—CMS.

38.     On December 31, 2007, DAS denied ACS' Protest, contending, among other things, that federal law did not apply to procurement of the MMIS Contract under RFP 2017Z1, and that since RFP 2017Z1 was allegedly a "new" RFP, the conflict it previously found with FourThought no longer existed. (Exhibit O, DAS Response). The DAS Response did not respond to ACS' comparison of the two RFPs' requirements, and conceded that the primary changes to RFP 2017Z1 related to extending the time for the contractor to perform its duties under the MMIS Contract.

39.     After receiving the DAS Response, representatives of ACS and DAS met on January 18, 2008 to further discuss the ACS Protest, and to discuss DHHS documents which were provided to ACS for the first time on January 4, 2008. During this discussion, ACS provided further information to DAS about the ACS Protest, and offered additional evidence in support of ACS' position that an award to FourThought would be inconsistent with applicable law, would be unfair to ACS, and would irreparably harm ACS.

40.     Following the January 18, 2008 meeting, ACS supplemented its Protest with additional documents evidencing the grounds under which FourThought should be disqualifie, and ACS should be awarded the Contract ("ACS's Supplemental Protest"). (Exhibit P, ACS' Supplemental Protest).

41. As described in ACS' Supplemental Protest, internal DHHS documents demonstrated that DAS incorrectly concluded the FourThought conflict had been removed by issuance of RFP 2017Z1, and by the preparation of a new "Alternatives Analysis" to replace the Alternatives Analysis previously prepared by GovConnect/FourThought. These internal documents demonstrated that the "replacement" Alternatives Analysis, prepared by Richard Sansbury, was a non-substantive "freshening up" or "update" of the GovConnect/FourThought Alternatives Analysis which "didn't change the substance of the content." (Exhibit P at 4). These documents also show that the two RFPs were virtually identical, and that DHHS staff admitted this fact in internal documents: "the technical requirements have not been significantly changed since the first procurement." (Exhibit P at 5). As ASC described in its line-by-line analysis in ACS' Supplemental Protest, 87% of the 949 requirements in RFP 2017Z1 were identical to those in RFP 1158Z1. At the January 18, 2008 meeting, DAS advised it would further consider ACS Protest and inform it of its conclusion.

42. At the January 18, 2008 meeting, DAS advised it would further consider ACS' Protest and inform it of DAS' conclusion.

43. As of January 30, 2008, DAS had neither reversed its denial of the ACS Protest nor indicated it had changed its intent to award the MMIS Contract to FourThought.

## COUNT ONE

### (Declaratory Judgment)

44. ACS restates and incorporates paragraphs 1 through 43 as if fully set forth herein.

45. Defendants' procurement of the MMIS Contract is subject to federal procurement regulations, including 45 C.F.R. part 74.

46. ACS is a federal taxpayer and a Nebraska taxpayer.

47. ACS is a disappointed bidder for the MMIS Contract.

48. Defendants' award of the MMIS Contract to FourThought would violate federal procurement regulations, including 45 C.F.R. part 74, in at least the following respects:

   a. Defendants failed to exclude FourThought from competing for the procurement that is the subject of RFP 2017Z1 based on FourThought's organizational conflict of interest and appearance of impropriety.

   b. Defendants failed to exclude FourThought from competing for the procurement that is the subject of RFP 2017Z1 based on the fact that FourThought was a contractor involved in the development of RFP 2017Z1.

   c. Defendants have failed to follow applicable procurement laws in awarding the MMIS Contract.

   d. Defendants failed to conduct an analysis of the reasonableness of each cost element proposed.

49. Defendants have indicated an intent to award the MMIS Contract to FourThought in violation of federal procurement regulations.

50. An actual controversy exists between ACS and Defendants as to the violations of federal procurement regulations.

51. Pursuant to 28 U.S.C. §§ 2201-2202, ACS is entitled to a declaration that Defendants' actions are violative of the federal procurement laws.

## COUNT TWO
### (42 U.S.C. § 1983)

52. ACS restates and incorporates paragraphs 1 through 51 as if fully set forth herein.

53. ACS is the lowest responsible bidder for the MMIS Contract pursuant to Nebraska law.

54. ACS has a constitutionally protected property interest in the award of the MMIS Contract under the Due Process Clause of the Fourteenth Amendment.

55. Defendants are acting under color of state law.

56. Defendants' award of the MMIS Contract to FourThought would violate ACS' due process rights under the Due Process Clause of the Fourteenth Amendment.

57. ACS will suffer irreparable harm if the MMIS Contract is awarded to FourThought in violation of federal law by depriving ACS of its right to be awarded the MMIS Contract, by denying ACS its right to fair and equal treatment in bidding for government contracts, and by denying ACS' constitutional rights under the Due Process Clause.

58. Pursuant to 42 U.S.C. § 1983, ACS is entitled to a declaration that Defendants' award of the MMIS Contract to FourThought would be unconstitutional, and to an injunction prohibiting the award of the MMIS Contract to a bidder other than ACS.

59. An award of reasonable attorneys' fees under 42 U.S.C. § 1988(b) is justified in this action.

WHEREFORE, ACS prays:

A. That this Court determine and declare Defendants in violation of federal procurement laws;

B. That this Court determine and declare Defendants' actions violative of ACS' federal due process rights;

C. That this Court enjoin Defendants and their successors from continuing to violate federal procurement statutes and regulations;

D. That this Court enjoin Defendants and their successors from awarding the MMIS Contract to FourThought Group, Inc.;

E.  That this Court determine and declare the Defendants' practices and procedures unconstitutional and violative of ACS' Due Process Rights;

F.  That this Court order Defendants to follow applicable procurement laws in awarding the MMIS Contract;

G.  That this Court declare ACS is the highest-scoring responsible bidder and order Defendants to award the MMIS Contract to ACS;

H.  That this Court award ACS its reasonable attorney fees, costs and expenses pursuant to 42 U.S.C. §§ 1983 and 1988; and

I.  That this Court award such other and further relief as the Court deems just and proper.

DATED this 1st day of February, 2008.

ACS STATE HEALTHCARE, LLC, Plaintiff

By /s/ Amber A. Furbee
Thomas J. Kenny #20022
Suzanne M. Shehan #20531
Amber A. Furbee #23708
KUTAK ROCK LLP
The Omaha Building
1650 Farnam Street
Omaha, NE  68102-2186
(402) 346-6000