IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| ACS STATE HEALTHCARE, LLC, a Delaware Limited Liability Company, | ) ) ) ) | |
| Plaintiff, | ) ) | 4:08CV3021 |
| v. | ) ) | |
| DAVID HEINEMAN, in his official capacity as GOVERNOR OF THE STATE OF NEBRASKA; JON BRUNING, in his official capacity as ATTORNEY GENERAL OF THE STATE OF NEBRASKA; CARLOS CASTILLO, in his official capacity as DIRECTOR, DEPARTMENT OF ADMINISTRATIVE SERVICES; CHRISTINE PETERSON, CEO OF THE DEPARTMENT OF HEALTH & HUMAN SERVICES; and STEVE SULEK, in his official capacity as ACTING MATERIAL DIVISION ADMINISTRATOR, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | MEMORANDUM OPINION |
| Defendants, | ) ) | |
| FOURTHOUGHT GROUP, INC., | ) ) | |
| Defendant-Intervenor. | ) ) | |

This matter is before the Court on plaintiff's motion for a temporary restraining order and preliminary injunction (Filing No. 9). A hearing was held on February 22, 2008, during which evidence was adduced on behalf of the parties. Having considered counsels' arguments and having reviewed the motion, the parties' briefs and evidentiary submissions, and the

applicable law, the Court finds plaintiff's motion should be denied.[1]

**BACKGROUND**

On April 4, 2004, the Nebraska Department of Health and Human Services ("DHHS") issued Request for Proposal ("RFP") 143Z1 to select a contractor to provide consulting services in connection with DHHS's Medicaid Management Information System ("MMIS") (*See* Filing No. 32, Ex. B).  RFP 143Z1 stated that the successful bidder would be required to "analyze [DHHS's] current [MMIS] and MMIS operations, identify and conduct cost/benefit analysis on alternatives and provide recommendations for MMIS enhancement, in-house development, replacement, and/or fiscal agent procurement, prepare an Advance Planning Document (ADP), Request for Proposal (RFP) and a Proposal Evaluation Plan (PEP)" (*Id*. at 1).  DHHS awarded the contract for RFP 143Z1 to GovConnect, Inc., now known as First Data Government Solution, Inc. ("FDGS").

FourThought Group, Inc. ("FourThought") served as a subcontractor to FDGS as one of two principle participants involved in the alternatives analysis portion of RFP 143Z1.

---

[1] Plaintiff's motion to strike intervenor's supplemental brief (Filing No. 71) will be denied.  Plaintiff's objection to the Bridgewater and Myers declarations in their entirety will be overruled, and plaintiff's specific objections to the Bridgewater Declaration to the extent it was relied on by the Court will be similarly overruled (Filing No. 73).

(Filing No. 38, Ex. 1 ("Ohmberger Decl.") at ¶ 10).  The four basic alternatives were identified by DHHS in the Initial Scope of Services section of RFP 143Z1; the alternatives included: "MMIS enhancement, in-house development, replacement, and/or fiscal agent procurement" (*Id.* at ¶ 11).  FourThought's subcontract with FDGS included a Statement of Work ("SOW"), which specified the terms and conditions of the services to be performed under the subcontract (*See* Filing 58, Ex. B).  Under the SOW, FourThought employee, Faye Makishima, was to "perform a current assessment of the MMIS system and work environment during the first three months of the project (i.e. Analysis Phase)" (*Id.*).  The SOW further specified that "this analyst work is focused on defining alternatives for [DHHS's] MMIS needs and participates in gathering information and building a business case to support the FDGS recommended solution to the State" (*Id.*).  Makishima's work for FDGS included researching publicly available information regarding trends in the MMIS market and collecting cost information from other states (Filing No. 58, Ex. 2 ("Bridgewater Decl.") ¶ 11).  Makishima's work for FDGS under RFP 143Z1 ended in early November 2004 at the alternatives analysis stage (*Id.* ¶ 13).  Makishima's employment with FourThought terminated in January 2005 (*Id.* ¶ 18).  No other FourThought employee worked under RFP 143Z1, and FourThought has

-3-

not served as a subcontractor for FDGS since November 2004 (*Id.* ¶¶ 17, 23).

On December 15, 2005, the Nebraska Department of Administrative Services ("DAS") issued RFP 1158Z1 to select "a qualified contractor to provide the design, development, implementation, and certification of a new [MMIS] . . . ." (Filing No. 32, Ex. C). FourThought, ACS State Healthcare, LLC ("ACS") and two other companies submitted bids in response to RFP 1158Z1. FourThought disclosed its subcontracting relationship with FDGS (Bridgewater Decl. ¶ 28). On June 14, 2006, Richard Nelson, DHHS Director, recommended that DAS disqualify FourThought's proposal due to an "organizational conflict of interest" or "the appearance of impropriety" (Filing No. 32, Ex. E at 4-5). Nelson noted that FourThought had "not participated in the FDGS Contract, to [DHHS's] knowledge, since the Alternatives Analysis stage;" however, Nelson was under the belief that FourThought had not terminated its relationship with FDGS (*Id.* at 4). Nelson recommended that DAS disqualify ACS and another company because their proposals exceeded the appropriated amount for the contract and recommended that DAS disqualify the fourth company for noncompliance (*Id.* at 3,5). DAS posted a letter of rejection on June 20, 2006. On August 3, 2006, the Centers for Medicare and Medicaid Services ("CMS") approved the termination of the procurement process for RFP 1158Z1 and

recommended that Nebraska continue to seek a replacement for the current MMIS (Ohmberger Decl., Attachment A).

FourThought formally protested its disqualification from RFP 1158Z1 (*See* Bridgewater Decl., Ex. G).  The state determined that because no contract had been awarded, it would not entertain protests (Filing No. 32, Ex. F at ¶¶ 39-40). FourThought filed a complaint in the Lancaster County, Nebraska, District Court on October 18, 2006, challenging its disqualification (Filing No. 32, Ex. F).  The district court found FourThought's claims were barred under the doctrine of sovereign immunity and that FourThought failed to state a claim under the Due Process Clause or 42 U.S.C. § 1983 because it lacked a protected property interest (Filing No. 32, Ex. G). FourThought appealed this decision to the Nebraska Court of Appeals.  The Court of Appeals affirmed the district court, finding FourThought lacked standing, its claims were barred by sovereign immunity, and it failed to show it had a protectable property interest in RFP 1158Z1 (Filing No. 32, Ex. H).

On May 2, 2007, DAS released RFP 2017Z1 to again select a contractor to replace the existing MMIS (Filing No. 32, Ex. I). Prior to the release of RFP 2017Z1, DHHS hired Richard Sansbury to reassess Nebraska's MMIS needs and to identify the best alternative (Ohmberger Decl. ¶¶ 19-20).  Sansbury's conclusion that DHHS was in the best position to operate the MMIS itself was

-5-

consistent with the conclusion reached by FDGS in RFP 143Z1; however, Sansbury's conclusion was formed based on an independent process from the FDGS analysis (*Id.* ¶¶ 26,27; Filing No. 32, Ex. O).  During the bid process, DAS allowed bidders to submit questions and published its responses as addendums to RFP 2017Z1 (*See* Bridgewater Decl., Ex. H).  In response to a question on who was restricted from bidding on RFP 2017Z1, DAS stated: "The current MMIS Consultant (MEDISCO) is not allowed to bid on the current MMIS procurement (RFP 2017Z1) as a contractor or subcontractor" (*Id.*).

ACS, FourThought, and one other company submitted proposals pursuant to RFP 2017Z1 (Ohmberger Decl. ¶ 36).  With DAS and CMS approval, DHHS conducted oral presentations and demonstrations prior to requesting BAFOs from the bidders (Ohmberger Decl. ¶¶ 41-43). DHHS issued a scoring summary on October 22, 2007, showing FourThought scored higher than ACS on the Technical Proposal Total, Technical and Cost Total, Oral Presentations Total, and Overall Total (Bridgewater Decl., Ex. J).  DHHS requested the bidders to submit their Best and Final Offers on October 26, 2007 (*Id.* ¶ 44).  FourThought's BAFO was $48,976,056 compared to ACS's BAFO of $49,067,262 (*Id.*).  A November 5, 2007, Scoring Summary revealed that FourThought's proposal was the highest scoring proposal (*Id.*, Ex. K).  On

November 21, 2007, DAS posted an intent to award RFP 2017Z1 to FourThought (Filing No. 32, Ex. M).

ACS filed an administrative protest on November 30, 2007, claiming that FourThought "has a conflict of interest, has been provided with an unfair advantage in the bidding process, and is far less as qualified than ACS to perform a very significant MMIS contract requiring extensive experience and technical skill" (Filing No. 32, Ex. N).  Specifically, ACS argued that: (1) because RFP 1158Z1 and RFP 2017Z1 were similar, the conflict that disqualified FourThought on RFP 1158Z1 could not have been cured by the issuance of RFP 2017Z1; (2) the procurement process was not open and fair; (3) FourThought is not the lowest responsible bidder because it is not qualified to perform the contract; (4) the DHHS failed to consider changes to FourThought's technical proposal after submission of its BAFO; and (5) FourThought violated the RFP by inflating its original cost proposal, thus submitting a proposal "without effort to preclude the State of Nebraska from obtaining the lowest possible competitive price" (*Id.*).  DAS issued an initial denial of ACS' protest on December 31, 2007 (Filing No. 32, Ex. O).  DAS met with ACS on January 18, 2008, and ACS submitted a supplemental protest on January 21, 2008 (*Id.*).  On February 11, 2008, DAS denied ACS's protest (Filing No. 32, Ex. Q).

-7-

ACS filed an amended complaint in this Court, seeking various declaratory and injunctive relief (Filing No. 26). Along with the complaint, ACS filed a motion for a temporary restraining order and preliminary injunction seeking a preliminary injunction enjoining defendants from awarding the MMIS contract to FourThought until trial on the merits (Filing No. 9).

## DISCUSSION

### I. Standing

"Standing is a 'threshold inquiry' and 'jurisdictional prerequisite that must be resolved before reaching the merits of a suit.'" *Medalie v. Bayer Corp.*, 510 F.3d 828, 829 (8th Cir. 2007) (citing *City of Clarkson Valley v. Mineta*, 495 F.3d 567, 569 (8th Cir. 2007). ACS asserts it has standing under both 42 U.S.C. § 1983 and the Declaratory Judgment Act, 28 U.S.C. § 2201.

ACS claims it has standing to bring its claims under § 1983 because the defendants deprived ACS of a property interest without due process in violation of the Fourteenth Amendment. "To state a claim under section 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States . . . ." *Buckley v. Barlow,* 997 F.2d 494, 495 (8th Cir. 1993) (quoting *West v. Atkins*, 487 U.S. 42 (1988)). "Property interests . . . . are created and their dimensions are defined by existing rules or understandings that stem from an

-8-

independent source such as state law . . . ." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). The Supreme Court stated:

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

*Id.*

The Nebraska Supreme Court stated in *Day v. City of Beatrice*, 101 N.W.2d 481 (Neb. 1960), that "[o]rdinarily an unsuccessful bidder for public work has acquired no legal right to protect, either in law or equity, since the letting of contracts to the lowest bidder is regarded as being for the benefit of the public and not for individual bidders." Nevertheless, ACS argues that under Nebraska law, the lowest responsible bidder of a competitive public contract acquires a property interest in the award of that contract once the state decides to award the contract. Neb. Rev. Stat. § 81-161 states, in pertinent part:

> All purchases, leases, or contracts which by law are required to be based on competitive bids shall be made to the lowest responsible bidder, taking into consideration the best interests of the state, the quality or performance of the personal property proposed to be supplied, its conformity with

-9-

>           specifications, the purposes for
>           which required, and the times of
>           delivery.

Here, the state adjudged FourThought to be the lowest responsible bidder and posted an intent to award the contract to FourThought. Therefore, ACS's assertion that it has a protectable property interest in the award of the contract is dependent upon findings by this Court that FourThought should have been disqualified, and if FourThought had been disqualified, that the state would have been required to award the contract to ACS.

ACS also asserts it has standing under the Declaratory Judgment Act, 28 U.S.C. § 2201. "The controversy requirement of the Declaratory Judgment Act is synonymous with that of Article III of the Constitution." *County of Mille Lacs v. Benjamin*, 361 F.3d 460, 463-64 (8th Cir. 2004) (citations omitted). "In order to demonstrate standing, a plaintiff must 'demonstrate that he has suffered [an] injury in fact, that the injury is fairly traceable to the actions of the defendant, and that the injury will likely be redressed by a favorable decision.'" *Id.* An injury in fact is one that "is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Jones v. Gale*, 470 F.3d 1261, 1265 (8th Cir. 2006). The Federal Circuit recently noted that § 2201 is an example "of legislation that expand[s] standing to constitutional limits and provide[s] a way for plaintiffs to bring actions in federal court when they

-10-

might otherwise be barred." *Teva Pharmaceuticals USA, Inc. v. Novartis Pharmaceuticals Corp.,* 482 F.3d 1330 (Fed. Cir. 2007).

Here, the Court finds the issue of standing is uniquely intertwined with the issue of whether FourThought had a disqualifying conflict of interest. In view of that, the Court has determined that ACS has met the threshold standing requirements for purposes of this motion.

**II. Preliminary Injunction**

Assuming ACS has the requisite standing to pursue its claims, the Court must decide the merits of ACS's motion for a preliminary injunction. The grant of a preliminary injunction is an extraordinary remedy. *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003). In determining whether to grant injunctive relief, a court is to consider the four *Dataphase* factors. *Medicine Shoppe Int'l, Inc. v. S.B.S. Pill Dr., Inc.*, 336 F.3d 801, 803 (8th Cir. 2003) (citing *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 113 (8th Cir. 1981)). These factors are "(1) the threat of irreparable harm to the movant; (2) the balance between the potential harm and any harm that granting the injunction will cause to other parties to the litigation; (3) the probability that the movant will succeed on the merits; and (4) the public interest." *Id.* As the moving party, ACS bears the burden of proving a preliminary injunction is warranted and bears

the burden of proving each of the *Dataphase* factors.  *Lankford v. Sherman*, 451 F.3d 496, 503 (8th Cir. 2006).

The Court finds each of the four *Dataphase* factors weighs in favor of denying ACS's motion.  The first factor the Court will address is the probability that ACS will succeed on the merits.  ACS's status is that of a disappointed bidder.  In order for ACS to obtain the relief it requests, the Court must find that the defendants erroneously failed to disqualify FourThought based on a conflict of interest.  ACS bases its allegations that FourThought had a disqualifying conflict of interest solely upon information and belief, which was in part drawn from ACS's comparison of the similarities between RFP 1158Z1 and RFP 2017Z1.  On the other hand, both the defendants and intervenor FourThought have submitted admissible evidence demonstrating that FourThought had no disqualifying conflict of interest.  A review of the evidence demonstrates that FourThought's minimal involvement as a subcontractor under RFP 143Z1 did not disqualify FourThought from consideration under RFP 2017Z1 and likely should not have disqualified FourThought from consideration under the prior RFP 1158Z1.

ACS is mistaken in its belief that because there are similarities between the two RFPs, this automatically leads to the conclusion that FourThought had a disqualifying conflict of interest.  In asserting FourThought has a conflict of interest,

-12-

ACS relies upon 45 C.F.R. § 74.43.  Such reliance is unavailing. Section 74.43 reads, in pertinent part:

> The recipient shall be alert to organizational conflicts of interest as well as noncompetitive practices among contractors that may restrict or eliminate competition or otherwise restrain trade. In order to ensure objective contractor performance and eliminate unfair competitive advantage, contractors that develop or draft grant applications, or contract specifications, requirements, statements of work, invitations for bids and/or requests for proposals shall be excluded from competing for such procurements.

The uncontroverted evidence before the Court establishes that one FourThought employee performed a limited amount of research at the initial alternatives analysis phase of RFP 143Z1 pursuant to FourThought's subcontract with FDGS.  The evidence also indicates that FourThought's subcontracting relationship with FDGS terminated upon completion of the alternatives analysis phase. There is no evidence that FourThought engaged in any of the disqualifying activities enumerated in § 74.43 in relation to RFP 1158Z1 or, more importantly, RFP 2017Z1.  Thus, the Court finds ACS fails to meet its burden of demonstrating a probability of success on the merits.

Similarly, balancing the threat of harm to ACS if an injunction does not issue with the threat of harm to defendants,

FourThought, and the interest of the public if an injunction issues weighs heavily in favor of denying ACS's motion.  ACS, like any other bidder of a public contract, expended resources to bid on RFP 2017Z1, knowing that it was possible ACS would not be awarded the contract.  In the absence of evidence that FourThought should have been disqualified, ACS can demonstrate no deprivation of rights or any entitlement to the award of the contract.  On the other hand, enjoining the state from awarding the contract to FourThought would cause irreparable harm to FourThought.  FourThought is a relatively small company, and it has expended considerable resources to bid on the contract (Bridgewater Decl. ¶ 54).  During the bidding process, DHHS indicated that only MEDISCO, who was then the MMIS consultant, would be precluded from bidding on the RFP (Bridgewater Decl., Ex. H).  Now that DAS has posted an intent to award the contract to FourThought, FourThought faces financial harm if an injunction is issued.  Already, defendants have agreed not to award the contract until the Court issues an order on the preliminary injunction.  FourThought alleges further delay may render it unable to perform the MMIS contract (*Id.* ¶¶ 51, 52, 54-56).

      Not only will FourThought likely be harmed if the injunction issues, further delay is not in the interest of the public.  DHHS's current MMIS was certified in 1978 (Ohmberger Decl. ¶ 2).  DHHS determined the best course was to replace the

-14-

current MMIS (*See* Filing No. 32, Ex. C).  The public has an interest in having a working MMIS and seeing that the replacement MMIS is put in place in a timely manner.  While it is true, as ACS alleges, that the public has an interest in seeing a fair procurement process, there is no indication that the process was unfair.

The Court finds that ACS failed to meet its burden that a preliminary injunction is warranted.  Each of the *Dataphase* factors weighs in favor of denying ACS's motion.  A separate order will be entered in accordance with this memorandum opinion.

DATED this 29th day of February, 2008.

BY THE COURT:

/s/ Lyle E. Strom
_____
LYLE E. STROM, Senior Judge
United States District Court